Curia, per Richardson, J.
The motion is for a non-suit, upon the ground that the contract .made b.y Miles Drake, to answer for the goods delivered to Mrs. Owens, by the plaintiff ’s, is within the protection and provisions of the Statute of frauds. Because such contract was never acknowledged in writing, nor was it made for and upon any sufficient consideration to make it binding upon him. The enactment that governs the case is as follows: “ No action shall be brought, &c. whereby to charge the defendant upon any special promise to answer for the debt, default or miscarriage of another person, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized.” The decisions expounding this fourth clause of the Statute of frauds and .perjuries, are very many. But the difficulty is not so much in the law as to perceive and decide what was the exact meaning of the parties in each particular case. In the case now before the Court we have to decide,
First. Whether Miles Drake was merely the surety of Mrs. Owens, the principal debtor, for the goods .in question, or, was he himself the original debtor for the goods, and Mrs. 0. not liable.
And secondly, whether any sufficient consideration passed to Miles Drake, either at the sale or subsequently, so as to render the contract for the amount of the goods, binding upon him, even if he were not the original , debtor and had not bound himself in writing.
*436 The first enquiry is resolved by asking who was the prin-cjpa| an¿ orjginal debtor for the goods? This is a question of Tact: Mrs. Owens bid off the goods. The entry in plaintiffs’ "books was thus, “Mrs. Eliza Owens bought of J. H. & A. Taylor, Auction and Commission Merchants,” &c. And the plaintiffs’s Clerk, J. W. Rice, says he' looked on her as the principal debtor. The goods were sold on a credit, and the plaintiffs refused to deliver them to her, unless Drake would endorse her note. This Drake agreed to do — whereupon the goods were sent to Mrs. Owens’store, but Drake'afterwards refused to endorse the note. Rice says, in his cross examination, “I told Drake I would deliver the goods, as soon as he would say he would endorse.”
Thus the promise of Drake was explicit but only verbal. Rice further says, whatever was paid was paid by Mrs. Owens.
The particular adjudication of our own that here applies, that of Leland v. Creyon, i. e. If the person for whose use goods are furnished, be liable at all, any promise by a third person to pay that debt must be in writing. This is well illustrated by the opposite case Mease v. Wagner. Where no action lies against the party undertaken for, it is not within the statute.
Now then, is it not plain, that Mrs. Owens was the original, and in the language of Rice “ principal debtor?’ The evidence, I think, places her obviously in that, position, while it places Drake in the position of a collateral surety, Only to answer in case of her default and non-payment.
The undertaking and promise of Drake was to become her endorser, which plainly keeps up the proper idea, of a provisional and collateral indebtedness for Mrs. Owens, the maker. The legal liability of an endorser, who is a provisional debtor, presents the precise idea of that kind of liability against which the Statute would guard men, unless it be put in writing.
The whole wisdom of the Statute against frauds is to render nugatory such collateral and provisional undertaking; unless the contract be put in writing, or be made for valuable consideration. The law is easily comprehended, and in this particular instance, as I understand it, applies to the case made by the evidence, as plainly as the common illustration of the Statute of frauds — “let A have goods and I will be security that he will pay for them, or if he does not pay I will.’’ Such an undertaking is collateral, and void, by the express protection of the statute against .such contracts, unless they be put in writing.
The contract of Drake amounted to this — “ let me have the goods she has bought, and I will endorse her note for the payment. In other words, I will be her surety for their amount. But she is-still the principal debtor, and I will answer in case- *437 of her default.” And, accordingly, the goods were charged to her alone, in plaintiffs’s books. (
It can make no difference, at what time the goods were sent to Mrs. 0.
The assurance of Drake equally refers to the purchase she had before made, and is therefore equally collateral.
The second enquiry is whether any sufficient consideration passed to Miles Drake, so as to render him subsequently, or before the sale, liable as the original debtor. A man may make himself liable for the default of another, either by an original undertaking, or by a sufficient consideration received, so as to render him liable, but there is none such in the present case. In every case of a delivery of goods, there is the same consideration. But these goods are the consideration of the indebtedness of the purchaser, not of the collateral undertaking. To make the goods constitute the two considerations would render the statute nugatory. This distinction gives the reason of that class of adjudications which protect the collateral or provisional debtor, in all cases where the principal debtor is liable at all, i. e. the goods delivered to the purchaser cannot be extended also into a consideration to the provisional debtor. Once make the goods delivered serve such double purpose, you strike down the statutory shield at a blow.
The case is well illustrated by the opposite and very recent decision in the case of Samuel Tindall v. T. T Touchberry. In that case a constable levied on a mare of one June. Touchberry agreed, if he would allow June to have the possession of the mare, he would be liable if not redelivered to the constable on the next day. This was held to be an original agreement by Touchberry. For, although made for the sake of June, June was not liable; and, therefore, the case was not within the Statute of Frauds. Because the whole credit was given to Touchberry. It was like the common illustration, “ let A have goods and I will pay for them.”— This was an original promise.
But if June had been liable, as is Mrs. Owens, Touchberry would have been shielded by the statute, and the decision reversed. In any case wherein the presiding Judge has refused a nonsuit, it is with hesitation that I differ from him in the consideration of the evidence. But in the present case, it is plain that the Judge hesitated to grant rather than that he refused the motion — choosing to leave the nonsuit to a higher tribunal. Upon the whole, therefore, this Court is of opinion that the proper construction of the promise and undertaking made by Drake, was collateral and as surety for Mrs. Owens, because she was, herself, clearly liable for the amount of the goods, and the undertaking of Drake was merely *438 provisional; and being without consideration, is protected by gtatute of Frauds.
The motion of the defendant to set aside the verdict and to enter a nonsuit, is, therefore, granted.
O’Neall, Evans, Frost and Wardlaw, JJ. concurred.

Motion granted.